60 P.3d 790 (2002)
PEOPLE of the State of Colorado, In the Interest of J.M.B., a Child,
Upon the Petition of the Denver Department of Human Services, Petitioner-Appellee,
and Concerning H.M.B. and J.A.B., Respondents-Appellants.
Nos. 01CA2519, 01CA2554.
Colorado Court of Appeals, Div. IV.
November 7, 2002.
*791 J. Wallace Wortham, Jr., City Attorney, Laura Grzetic Eibsen, Assistant City Attorney, Denver, Colorado, for Petitioner-Appellee.
Joan S. Heller, Denver, Colorado, for Respondent-Appellant H.M.B.
Philip Robert James, Denver, Colorado, for Respondent-Appellant J.A.B.
Opinion by Judge VOGT.
In this consolidated appeal, H.M.B. (mother) and J.A.B. (father) appeal from the judgment terminating the parent-child legal relationship with their daughter, J.M.B. We affirm.
*792 The petition in dependency or neglect was filed in February 2000, when the child was nine months old. Mother had tested positive for amphetamines and marihuana after being hospitalized for seizures resulting from injuries incurred from suspected domestic violence. It was alleged that both parents had drug and alcohol problems and an extensive history of domestic violence.
Although the child was returned to mother's care in March 2000, she was again removed and placed with maternal relatives when mother was taken by police to a psychiatric ward. The child was placed with the paternal grandfather and stepgrandmother when she was fourteen months old and remained there at the time of the termination hearing a year and a half later.

I.
Mother asserts that her treatment plan was not appropriate because it did not sufficiently address her mental health problems. We disagree.
We note at the outset that father joins in mother's objections and arguments for purposes of this appeal. However, father lacks standing to challenge the appropriateness of mother's treatment plan. See People in Interest of R.J.A., 994 P.2d 470 (Colo.App.1999).
An appropriate treatment plan is defined as one that is "reasonably calculated to render the particular [parent] fit to provide adequate parenting to the child within a reasonable time and that relates to the child's needs." Section 19-1-103(10), C.R.S.2002. The appropriateness of a treatment plan must be measured by its likelihood of success in reuniting the family and by the extent to which its requirements were realistic in light of the facts existing at the time it was adopted. People in Interest of A.H., 736 P.2d 425 (Colo.App.1987).
It is the parent's responsibility to comply with the treatment plan. See People in Interest of A.H., supra. Success of a treatment plan cannot be guaranteed; thus, the ultimate failure of a plan does not necessarily mean that the plan was inappropriate. See People in Interest of L.G., 737 P.2d 431 (Colo.App.1987).
Here, the treatment plan addressed the primary problem that interfered with mother's parenting, which was her substance abuse. Mother's compliance with aspects of the plan addressing this problem was inconsistent, and a drug evaluation expert testified that the plan had not been successful in this regard.
Contrary to mother's argument that she was not provided with sufficient mental health treatment, there was testimony that mother had met with a psychiatrist, who diagnosed her with depression and posttraumatic stress disorder. Mother herself testified that she had seen psychiatrists and counselors, had received "very much counseling" and education about the causes of her mental health problems, and continued to take antidepressant medication that had been prescribed for her.
Having reviewed the record, we agree with the juvenile court that the treatment plan was appropriate and that it was mother's noncompliance that rendered it unsuccessful.

II.
Mother further contends that the court did not consider her individual compliance with the treatment plan, independent of father's compliance. We do not agree.
Parental rights are personal between each parent and child. Termination is permissible only when there is a history of severe and continuous neglect by the particular parent whose rights are to be terminated. People in Interest of K.S., 33 Colo.App. 72, 515 P.2d 130 (1973).
In determining whether a parent's conduct or condition is unlikely to change within a reasonable time to meet the child's needs, the trial court may consider whether any change has occurred between the time the petition in dependency or neglect was filed and the time of the termination hearing. People in Interest of V.W., 958 P.2d 1132 (Colo.App.1998).
Here, the juvenile court acknowledged that the termination criteria apply individually to each parent. It also noted that, because the *793 parents had chosen to continue as a family unit, "individual considerations of the evidence applicable to either parent necessarily impact on the other." Notwithstanding that observation, the record amply establishes that mother was unfit based solely on her own actions.
Although mother initially complied with the treatment plan, she later relapsed. She did not attend group sessions, missed appointments with her counselor, and did not provide required urine samples. Despite the expert recommendations, mother did not believe that she needed to be in a residential drug program and, thus, did not follow through with seeking admittance into that program. As noted above, the treatment plan was ultimately unsuccessful in addressing mother's significant substance abuse problems and making her fit to parent her child. Thus, termination of mother's parental rights was warranted apart from the concerns regarding father.

III.
Both parents assert that the juvenile court did not consider and eliminate less drastic alternatives to the termination of their rights and that the court's finding to that effect was contrary to the evidence. Again, we disagree.
In terminating the parent-child legal relationship, the trial court must give primary consideration to the physical, mental, and emotional conditions and needs of the child. Section 19-3-604(3), C.R.S.2002.
The court must consider and eliminate less drastic alternatives before entering an order terminating the parent-child legal relationship. People in Interest of M.M., 726 P.2d 1108 (Colo.1986). However, the best interests of the child govern any termination decision, and the court may find that long-term foster care is not a viable option when the child needs the permanency that only adoption can provide. See People in Interest of M.M., supra; People in Interest of S.T., 678 P.2d 1054 (Colo.App.1983).
Here, contrary to mother's contention, the evidence shows that alternatives to termination were considered. A family conference was held. Placement with mother's brother was suggested. Although the child was placed with the brother, he requested that she be removed after a month. Father suggested placement with his mother. However, she had cancer and was not in a position to care for a young child. No other relatives besides the paternal grandfather and stepgrandmother came forward as possible caretakers for the child.
A social worker testified that the child was thriving in the care of her paternal grandfather and stepgrandmother and that anything less than adoption would be detrimental to the child's interests. The grandparents wanted to adopt the child to relieve her from the emotional roller coaster of her parents' drug and alcohol abuse. The grandparents and the parents had long been estranged. Although the grandparents were most concerned about father, mother and father resided together as a married couple and intended to continue to do so.
We do not agree with father that, in light of L.L. v. People, 10 P.3d 1271 (Colo.2000), termination is unwarranted if a child can be placed in the permanent guardianship of family members under an order that significantly limits the child's contacts with her parents. In L.L., the supreme court upheld such an order. However, in that case the department of human services was seeking only permanent guardianship, not termination; and the opinion does not state or suggest that termination is no longer appropriate given the availability of the type of order entered there.
Placement of a child in the guardianship of family members with limited or no parental contact may be a viable alternative to termination in some cases. In other instances, however, there may be such estrangement between the parents and the guardians that nothing short of termination will be in the child's best interests. The juvenile court's determination that this was such a case is not contrary to the evidence and thus will not be set aside on appeal. See People in Interest of C.A.K., 652 P.2d 603 (Colo.1982).

*794 IV.
Finally, despite their lack of specificity, the juvenile court's findings conform to the statutory termination criteria and are supported by the record. Thus, because we can determine the basis for the court's order of termination, its ruling will not be set aside for insufficient findings. See People in Interest of C.A.K., supra; People in Interest of A.J., 757 P.2d 1165 (Colo.App.1988).
The judgment is affirmed.
Judge DAVIDSON and Judge DAILEY concur.