124 P.3d 905 (2005)
The PEOPLE of the State of Colorado, In the Interest of T.E.M., T.E.M., W.B.M., Jr., T.B.M., and C.E.M., Children, Upon the Petition of Denver Department of Human Services, Petitioner-Appellee,
and Concerning W.B.M., Respondent-Appellant.
No. 05CA0837.
Colorado Court of Appeals, Div. II.
October 6, 2005.
*907 Cole Finegan, City Attorney, Laoise King, Assistant City Attorney, Denver, Colorado, for Petitioner-Appellee.
Phillip Robert James, Denver, Colorado, for Respondent-Appellant.
LOEB, J.
W.B.M. (father) appeals from a judgment terminating the parent-child legal relationship between him and his children, T.E.M., T.E.M., W.B.M., Jr., T.B.M., and C.E.M. We affirm.

I.
Father claims the termination order must be reversed because the magistrate failed to advise him of his right to a hearing before a judge at the adjudicatory and dispositional stage of the proceeding. Specifically, he argues that, although he waived formal advisement of his rights pursuant to § 19-3-202(1), C.R.S.2005, and C.R.J.P. 4.2(a), he did not waive advisement of his right to be heard by a judge. He thus claims the magistrate lacked the authority to enter the adjudicatory order. We disagree.

A.
Initially, we reject the People's argument that father's failure to file a petition for review of the adjudicatory and dispositional orders in the district court precludes appellate review.
The filing of a petition for review in the district court is required for appellate review of a magistrate's order. See C.S. v. People, 83 P.3d 627 (Colo.2004).
Here, while the magistrate entered a written adjudicatory order as to mother, the record on appeal does not include such an order as to father. It thus appears that the magistrate's adjudicatory and dispositional orders as to father were not reduced to writing as required by § 19-1-108(4)(c), C.R.S.2005. Therefore, there was no final adjudicatory or dispositional order from which father could seek review in the district court. See People in Interest of M.C.L., 671 P.2d 1339 (Colo.App.1983)(holding that the time in which to file a petition for review of a commissioner's order commences upon the signing of the written order).
The record, however, contains documentation, including minute orders, showing that the magistrate accepted father's admission, sustained the petition in dependency or neglect, and approved a treatment plan for him. These orders became appealable upon entry of the judgment of termination. See People in Interest of J.M., 74 P.3d 475 (Colo. *908 App.2003) (documents in the record were sufficient to establish that children were adjudicated dependent or neglected for purposes of termination hearing).
Thus, we conclude that father's contention here is properly before us on appeal.

B.
As pertinent here, § 19-1-108(3)(a), C.R.S. 2005, provides:

During the initial advisement of the rights of any party, the magistrate shall inform the party that ... he or she has the right to a hearing before the judge in the first instance and that he or she may waive that right but that, by waiving that right, he or she is bound by the findings and recommendations of the magistrate, subject to a request for review as provided in subsection (5) of this section.
(Emphasis added.)
In dependency and neglect proceedings, the advisement must be given at the parent's first appearance. Section 19-3-202(1); C.R.J.P. 4.2(a); see People in Interest of A.M.D., 648 P.2d 625 (Colo.1982). The statute is mandatory and reversal is required when a magistrate completely fails to advise the parties of their right to be heard by a judge. In Interest of A.P.H., 98 P.3d 955 (Colo.App.2004); In re R.G.B., 98 P.3d 958 (Colo.App.2004).
However, a parent may waive his or her right to a formal advisement. In Interest of A.P.H., supra. And because the § 19-1-108(3)(a) advisement must be made during the initial advisement of rights pursuant to § 19-3-202(1), a waiver of the initial advisement includes a waiver of the advisement of the right to be heard by a judge.
Moreover, § 19-1-108(3)(a) does not require that a parent be advised at any time other than the initial appearance. Accordingly, a parent's waiver of the right to a formal advisement is effective throughout the dependency and neglect proceedings.
Here, father, who was represented by counsel, waived his right to a formal advisement at his first appearance on January 14, 2004, and then entered admissions to portions of the petition in dependency or neglect. He thus waived his right to be heard by a judge at the adjudicatory hearing, and the magistrate was not required to re-advise him of his rights at that hearing.
Finally, we note that father also claims the magistrate lacked jurisdiction to preside over the termination hearing and to enter the order of termination. However, a district court judge, not a magistrate, conducted the termination hearing and entered the order.

II.
Father claims the juvenile court erred in denying his motion to continue the termination hearing. We perceive no error.
A motion for continuance is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal absent a clear abuse of that discretion. C.S. v. People, supra.
In ruling on the motion, the trial court should balance the need for orderly and expeditious administration of justice against the facts underlying the motion, while considering the child's need for permanency. See C.S. v. People, supra; People in Interest of M.M., 726 P.2d 1108 (Colo.1986).
In this case, because two of the children were under the age of six when they were removed from the home, the expedited permanency planning (EPP) provisions applied and required that the termination hearing be held within 120 days after the motion for termination was filed. In EPP cases, the trial court "shall not grant a delay unless good cause is shown and unless the court finds that the best interests of the child will be served by granting a delay." Sections 19-3-508(3)(a), 19-3-602(1), C.R.S.2005.
The motion for termination was filed on October 18, 2004, and the hearing was held on February 18, 2005, three days after the 120-day deadline had passed. At the beginning of the hearing, counsel for father indicated that she had been unable to contact him and that, although he had been given notice of the hearing several times, he was not present at the hearing. Counsel told the court it was uncharacteristic for father to *909 miss the hearing and speculated that he was having medical problems, but admitted she had no evidence that that was the case.
The People and the guardian ad litem objected to the continuance, noting that father had not attended scheduled visitations with the children for two months, and stressing that this was an EPP case where delay was not in the children's best interests.
The court denied the motion, concluding that father had not shown good cause for a continuance and that delay was not in the children's best interests. In its findings, the court noted that father had not contacted the court to explain his failure to appear, and that the court could not "assume" his absence "is related to any medical condition when the court has no evidence to support that."
The court's ruling reflects proper balancing of the reasons proffered for the continuance, the need for prompt resolution of the proceeding, and the children's best interests. Accordingly, we perceive no abuse of discretion in the court's denial of the motion to continue. See C.S. v. People, supra; People in Interest of M.M., supra.

III.
Father maintains that the juvenile court erred in admitting into evidence his arrest record, which the Department of Public Safety certified as a "true copy of the official [Colorado Bureau of Investigation's] record as of January 29, 2005." Father claims the arrest record contained hearsay, "required authentication," and might have contained inaccuracies. He also claims his arrest record was "in part not relevant." We discern no reversible error.
We have reviewed the exhibit and the transcript of the termination hearing, and conclude that any error in its admission was harmless. When the court admitted father's arrest record into evidence, it noted that it would "decide issues of relevancy and weight to be given any of the information in the exhibits," and there is no indication that the court considered it in entering the termination order. See People in Interest of A.R.S., 31 Colo.App. 268, 502 P.2d 92 (1972)(because it is presumed in a trial to the court that the court disregards any evidence that is otherwise inadmissible hearsay, immaterial, or incompetent, the admission of such evidence does not constitute reversible error).

IV.
We also reject father's contention that the evidence was insufficient to support the juvenile court's finding that he did not reasonably comply with the treatment plan.
To terminate the parent-child legal relationship, clear and convincing evidence must establish, among other things, that an appropriate treatment plan, approved by the trial court, has not been complied with by the parent or has not been successful in rehabilitating the parent. Section 19-3-604(1)(c)(I), C.R.S.2005; People in Interest of A.M.D., supra.
Absolute compliance with a treatment plan is not required. People in Interest of C.L.I., 710 P.2d 1183 (Colo.App.1985). However, partial compliance, or even substantial compliance, may not be sufficient to correct or improve the parent's conduct or condition, or to render the parent fit. People in Interest of D.M.W., 752 P.2d 587 (Colo.App.1987); see People in Interest of C.A.K., 652 P.2d 603 (Colo.1982).
Finally, in termination proceedings, the credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn therefrom, are within the discretion of the trial court. Thus, a trial court's findings and conclusions will not be disturbed on review if the record supports them. People in Interest of C.A.K., supra.
Intervention was necessitated here because the children were neglected and the home environment was unsafe, unsanitary, and unhealthy.
The testimony presented at the termination hearing established that father complied with some aspects of the treatment plan, including the requirements that he submit to a psychological evaluation and random urinalysis, attend parenting classes, and participate in therapy. Father also regularly *910 attended visits with the children until two months before the termination hearing.
However, the evidence also established that father failed to comply with several critical components of the treatment plan that were designed to address his mental health and parenting issues, and improve the condition of the home.
Specifically, father did not follow up on referrals for medical treatment and other services and did not consistently participate in therapy. Although he regularly attended parenting classes, father had not internalized and thus could not apply the skills he had learned. The caseworker testified that despite his training, father sat on the couch and did not interact with the children during visits, and that when a safety issue arose, he directed one of the older children to deal with it.
In addition, the home continued to be unsafe and unsanitary, and the caseworker testified that father had poor personal hygiene, which was an issue for the children. She testified that father's medical and mental health problems prevented him from being physically and emotionally able to meet the demands of parenting, and that his efforts under the treatment plan were insufficient to correct or improve the issues that led to the children's removal from the home.
Based on this evidence, the court found that, although father attempted to comply with several components of the treatment plan, "many of the most significant issues which brought the case before the Court  specifically, the condition of the home and safety of the home environment, as well as the medical and psychological issues for [father]  remain significant issues." The court thus concluded that father had not reasonably complied with the treatment plan and that it had not been successful in rehabilitating him. Because the record supports the juvenile court's findings, we will not disturb them on appeal.

V.
Father's final contentions are that termination was not in the children's best interests and that the juvenile court erred in concluding that there were no less drastic alternatives to termination. Specifically, he argues that termination was not in the best interests of the three older children because they might not be adopted, and that the court did not adequately consider permanent placement with the maternal grandmother or long-term foster care. Again, we disagree.
In considering the termination of the parent-child legal relationship, the court must give primary consideration to the physical, mental, and emotional conditions and needs of the child. Section 19-3-604(3), C.R.S. 2005.
Implicit in the statutory scheme for termination set forth in § 19-3-604(1)(c), C.R.S.2005, is a requirement that the trial court consider and eliminate less drastic alternatives before entering an order of termination. People in Interest of M.M., supra.
Permanent placement with a family member is dependent on the child's best interests, as is the determination whether to order permanent placement as an alternative to termination. See §§ 19-1-115(1)(a), 19-3-604(1), 19-3-605, C.R.S.2005; People in Interest of M.B., 70 P.3d 618 (Colo.App.2003); People in Interest of J.M.B., 60 P.3d 790 (Colo.App.2002); see also § 19-1-102, C.R.S. 2005. Thus, long-term or permanent placement may not be appropriate when it does not provide adequate permanence or otherwise meet the child's needs. People in Interest of J.M.B., supra; People in Interest of E.I.C., 958 P.2d 511 (Colo.App.1998); People in Interest of S.T., 678 P.2d 1054 (Colo.App. 1983).
Here, the caseworker testified that she considered long-term placement with the grandmother as an alternative to termination, but rejected it because the grandmother ran a state-funded residential facility for registered sex offenders in her home. The grandmother was unwilling to stop running the facility in order to care for the children because she needed the income it provided.
The children's therapist testified that the oldest child believed her primary responsibility was to take care of her father and that, because she was placing his needs above hers, she was not taking care of herself. The child felt a strong sense of loyalty to father and was thus unable to make the decision to sever her ties to him so she could move on *911 psychologically and allow herself to bond with and get her needs met by another family. The therapist expressed the opinion that the child needed someone else to make that decision for her, and that, because she needed "a concrete break" from father, termination was in her best interests.
The therapist further testified that the other two older children had expressed an interest in being adopted or finding a "forever family," and that adoption was possible for them and likely for the two younger children. The therapist and caseworker acknowledged that the oldest child would probably not be adopted, but agreed that termination was in the best interests of all of the children even if they were not adopted because the children needed the safety and security of permanent homes.
Both witnesses testified that long-term placement, whether with a relative or in a foster home, was not a viable alternative for the children in the absence of termination. The therapist explained that it would not be beneficial to the children to maintain the parent-child legal relationship because it would leave them in limbo and "create an ambiguity" about whether they would ever go home that would be confusing for them. She expressed the opinion that termination was necessary to enable the children "emotionally to cut that tie" and allow themselves to "move on" and "love or be loved by somebody else" without "the dilemma of loyalties" to father.
This evidence supports the juvenile court's rejection of placement with the grandmother or a long-term foster family as a viable less drastic alternative to termination, and its determination that termination was in the children's best interests, whether or not they were ultimately adopted. Accordingly, we will not disturb the court's ruling on appeal. See People in Interest of J.M.B., supra.
The judgment is affirmed.
Judge ROTHENBERG and Judge DAILEY concur.