The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
February 13, 2020

## 2020COA30

**No. 19CA1406, *People in Interest of A.M.* — Juvenile Court — Dependency and Neglect — Termination of the Parent-Child Legal Relationship**

A division of the court of appeals clarifies that when a juvenile court finds that two options meet the child's physical, mental, and emotional needs, including adequately providing for permanency, it must choose the option short of termination of the parent-child relationship.

COLORADO COURT OF APPEALS                                    **2020COA30**

Court of Appeals No. 19CA1406
Larimer County District Court No. 17JV249
Honorable Gregory M. Lammons, Judge

The People of the State of Colorado,

Appellee,

In the Interest of A.M., a Child,

and Concerning T.M.,

Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE TOW
Webb, J., concurs
Terry, J., dissents

Announced February 13, 2020

Jeannine S. Haag, County Attorney, Jennifer A. Stewart, Senior County
Attorney, Fort Collins, Colorado, for Appellee

Josi McClauley, Guardian Ad Litem

Steven E. Baum, Office of Respondent Parents' Counsel, Denver, Colorado, for
Appellant

¶ 1 In this dependency and neglect proceeding, T.M. (father) appeals the juvenile court's judgment terminating the parent-child legal relationship between him and A.M. (the child). We reverse and remand with directions. In doing so, we clarify that if a juvenile court determines that an allocation of parental responsibilities (APR) adequately serves a child's physical, mental, and emotional needs, including providing for adequate permanence, it cannot terminate the parent-child relationship on the basis that termination of parental rights would be in the child's best interests.

## I. Background

¶ 2 In June 2017, the Larimer County Department of Human Services received a report that the newborn child's umbilical cord blood had tested positive for opiates. The child's mother also tested positive for drugs. Later, at the request of the Department, father took a sobriety test, which was positive for methamphetamine, THC, and alcohol. The Department filed a motion for temporary custody, which a magistrate granted. The Department placed the child with her paternal aunt. The Department then filed a petition in dependency and neglect.

¶ 3    Father admitted the petition's allegations, and a magistrate adjudicated the child dependent or neglected. The magistrate also adopted a treatment plan for father, deeming it "both appropriate and in the best interest of the [c]hild." The Department later filed a motion to terminate father's parental rights.

¶ 4    After a hearing, the juvenile court found that the parents were unfit and that they were unlikely to change within a reasonable time. The court also found that terminating the parents' rights would be in the child's best interests. However, the court determined that because an APR to paternal aunt was a viable less drastic alternative, it could not terminate parental rights.

¶ 5    The Department appealed, contending that the court misapplied the law when it determined that "any permanency option . . . was an automatic bar to termination of parental rights." In an unpublished opinion, a division of this court agreed with the Department. That division interpreted the juvenile court's order as concluding that because the child's aunt was willing to accept an APR, the juvenile court was precluded from terminating the parent-child relationship, without regard to whether the APR was in the best interests of the child. The division remanded the matter to the

juvenile court to determine whether the APR was in the best interests of the child. *People in Interest of A.M.*, (Colo. App. No. 18CA1091, May 2, 2019) (not published pursuant to C.A.R. 35(e)) (*A.M. I*).

¶ 6 On remand, the juvenile court held a case management conference, but no party offered any additional testimony or any position regarding the directions on remand. The juvenile court then issued a new order. In its order on remand, the juvenile court took issue with the *A.M. I* division's interpretation of its original order, noting that it had made "no such finding" that merely because the aunt was willing to accept an APR it was required to take that path. Rather, the juvenile court indicated that by finding the APR to be viable, it had implicitly found that it was in the child's best interest. The juvenile court then found:

> In this case, the [c]ourt was presented with two viable alternatives: 1) permanent placement with [the child's aunt]; or, 2) termination with adoption to [the aunt]. Both of those options provided safety and stability for A.M. Both provide appropriate permanence. Neither would create a feeling of temporariness. Both would serve A.M.'s physical, mental, and emotional needs.

¶ 7 The juvenile court explained that it had previously believed that where "two viable options would serve the [c]hild's physical, mental, and emotional needs, then the [c]ourt must choose the less drastic option." But it felt that the *A.M. I* division had directed it to choose between the two alternatives based on which one was the best option. Ultimately, the juvenile court concluded that "termination is better for the child because it provides a slightly higher probability of permanence. Thus, the [c]ourt finds termination to be in [the child's] best interest."

## II. Father's Contention

¶ 8 Father contends that the juvenile court erred by terminating his parental rights when termination provided only "a slightly higher probability of permanence than an existing less drastic alternative[,] namely, permanent placement with paternal aunt." We agree.

### A. Threshold Matters

¶ 9 The Department and guardian ad litem (GAL) make assertions that we must address before analyzing father's claim.

#### 1. Claim Preclusion

¶ 10    The Department, in its answer brief, suggests that we should dismiss father's contention under the doctrine of claim preclusion, otherwise known as res judicata.  We disagree.  Claim preclusion bars relitigation of matters that were decided in a prior proceeding, as well as matters that could have been raised in a prior proceeding but were not.  *Argus Real Estate, Inc. v. E-470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo. 2005).

¶ 11    In the first appeal, the *A.M. I* division concluded that the juvenile court did not determine whether an APR was in the child's best interests when it denied the Department's request to terminate father's parental rights.  In this appeal, we understand father's contention to be that, having now found that an APR would serve all of the child's needs, a less drastic alternative exists in this case, and that the court erred in nonetheless terminating father's parental rights.

¶ 12    Because this claim was not addressed in the first appeal, it is not precluded.

### 2.    Law of the Case Doctrine

¶ 13    We understand the GAL, in her answer brief, to request that we dismiss father's appeal under the law of the case doctrine.

Again, we disagree. The law of the case doctrine recognizes that prior relevant rulings made in the same case are generally to be followed. *In Interest of C.A.B.L.*, 221 P.3d 433, 438 (Colo. App. 2009). But the doctrine applies to decisions of law, not to determinations of fact. *Fortner v. Cousar*, 992 P.2d 697, 700 (Colo. App. 1999).

¶ 14     To begin, the decision in *A.M. I* is susceptible of two readings. On the one hand, the division may have done no more than remand the matter for a determination yet to be made by the juvenile court — i.e., whether an APR would serve the child's best interests. Alternatively, the decision could be read, as the juvenile court read it, to suggest that when faced with two viable alternatives that both meet the statutory threshold of serving the child's physical, mental, and emotional needs, the court must select the single best alternative.

¶ 15     To the extent the decision in *A.M. I* is limited to the first interpretation, it did not establish a legal rule regarding whether the juvenile court has the obligation to choose the best of two viable options. To the extent the holding in *A.M. I* can be given this broader reading, we are not bound by it. *See People v. Thomas*,

6

2015 COA 17, ¶ 13 n.2 ("[T]he law of the case doctrine does not bind one division of this court to an earlier decision of another division, even in the same case."). Either way, the law of the case does not preclude our addressing father's contention.

## B. Standard of Review

¶ 16 Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves application of the termination statute to evidentiary facts. *People in Interest of L.M.*, 2018 COA 57M, ¶¶ 17, 24-29 (applied specifically to less drastic alternatives considerations).

¶ 17 Insofar as the question involves the juvenile court's findings of fact, the court is the fact finder; it determines the credibility of witnesses and the probative effect and weight of the evidence. *People in Interest of C.H.*, 166 P.3d 288, 289-90 (Colo. App. 2007). It also decides what inferences it will draw from that evidence. *Id.* And we may not disturb the court's findings, including its ultimate finding to terminate a parent's parental rights, if the record supports them. *Id.*

¶ 18 We review a juvenile court's legal conclusions de novo when deciding mixed questions of fact and law. *L.M.*, ¶ 17.

## C.    Law

¶ 19    A juvenile court may terminate parental rights after finding, by clear and convincing evidence, that (1) the child has been adjudicated dependent and neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan, or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time.  § 19-3-604(1)(c), C.R.S. 2019; *People in Interest of N.A.T.*, 134 P.3d 535, 537 (Colo. App. 2006).  Father does not challenge the court's findings that these criteria were met in this case.

¶ 20    The statutory criteria imply the requirement that the court consider and eliminate less drastic alternatives before entering a termination order.  *People in Interest of M.M.*, 726 P.2d 1108, 1122-23 (Colo. 1986).

¶ 21    Termination of parental rights is a decision of paramount gravity affecting a parent's fundamental constitutional interest in the care, custody, and management of his or her child.  *K.D. v. People,* 139 P.3d 695, 700 (Colo. 2006).  The state must exercise extreme caution in terminating parental rights.  *Id.*  Consequently,

a juvenile court must strictly comply with the appropriate standards for termination. *Id.* Because the determination of less drastic alternatives is implied in the statutory criteria for termination, the court must also strictly comply with the appropriate standards when determining less drastic alternatives.

¶ 22 As with all other criteria, when considering whether any less drastic alternatives to termination are viable, the juvenile court must "give primary consideration to the physical, mental, and emotional conditions and needs of the child." § 19-3-604(3); *see also People in Interest of J.L.M.*, 143 P.3d 1125, 1126-27 (Colo. App. 2006). As relevant in this case, the juvenile court must also consider whether permanent placement with a relative provides "adequate permanence" or stability for the child. *People in Interest of T.E.M.*, 124 P.3d 905, 910-11 (Colo. App. 2005); *see People in Interest of A.R.*, 2012 COA 195M, ¶ 41.

¶ 23 Case law also provides guidance as to what the court may *not* consider in determining whether less drastic alternatives to termination exist. Importantly, "the parental relationship should not be terminated simply because the child's condition thereby

might be improved." *People in Interest of E.A.*, 638 P.2d 278, 285 (Colo. 1981).

¶ 24     Divisions of this court have determined that consideration of the child's best interests is applicable to less drastic alternatives decisions.

- Some divisions, as noted above, have concluded that the child's best interests "govern" termination, generally. *See People in Interest of J.M.B.*, 60 P.3d 790, 793 (Colo. App. 2002); *see also People in Interest of Z.M.*, 2020 COA 3M, ¶ 32 ("If the record supports the court's findings and conclusions that no less drastic alternatives existed and that termination of parental rights was in the child's best interests," the court will not disturb the findings. (citing *People in Interest of M.B.*, 70 P.3d 618 (Colo. App. 2003), which, however, does *not* mention the child's best interests as part of the termination decision)).

- Another division concluded that the court must consider the child's best interests when considering any placement "short of termination." *A.R.*, ¶ 44.

- And still another division indicated, specifically, that the child's permanent placement with a relative "is dependent" on the child's best interests. *T.E.M.*, 124 P.3d at 910.

We do not read these cases to require, however, that the phrase "best interests of the child" be used as a superlative — that the juvenile court must glean which of the alternatives that adequately meet the child's needs would *best* do so. Rather, the inquiry must be whether there is an alternative short of termination that *adequately* meets the child's physical, emotional, and mental health needs.

## D. Analysis

¶ 25 To reiterate, the juvenile court found that both an APR to paternal aunt and termination of parental rights would adequately provide for the child's mental, physical, and emotional conditions and needs. Because the record supports these findings, we are bound by them. Nevertheless, in its order on remand, the juvenile court found that the termination of father's parental rights was in the child's best interest "because it provides a slightly higher probability of permanence. Thus, the [c]ourt finds termination to be in [the child's] best interest."

¶ 26   In our view, the juvenile court's original understanding of the law was correct: when both an APR to a relative and termination would adequately serve the child's physical, mental, and emotional needs, termination must be denied. To the extent the division in *A.M. I* held otherwise, we respectfully disagree.

¶ 27   This view is consistent with the mandate recognized in *People in Interest of M.M.*, requiring that *before* an order terminating the parent-child relationship may be entered, the court must consider *and reject* less drastic alternatives. 726 P.2d at 1123. It also recognizes the parent's constitutional interests. *See id.* at 1122 n.9 ("Requiring a court to give adequate consideration to less drastic alternatives before entering an order of termination gives due deference to the constitutional interest of the parent . . . .").

¶ 28   In this case, the juvenile court determined that both an APR and termination would serve the child's physical, mental, and emotional needs, and would provide appropriate permanence. Thus, this case is distinguishable from cases such as *People in Interest of S.N-V.*, where the court found that the child's need for permanence could not be met by permanent placement, but rather could "only be assured by adoption." 300 P.3d 911, 920 (Colo. App.

12

2011).  Simply put, once the juvenile court properly determined that an APR was a less drastic alternative that would adequately serve the child's needs, it could not terminate the parent-child legal relationship.

### III.   Conclusion

¶ 29    The judgment is reversed, and the case is remanded for the juvenile court to enter an order allocating parental responsibilities to the paternal aunt.  However, if on remand the GAL or the Department asserts that circumstances have changed during the pendency of this appeal such that an APR to the paternal aunt would no longer adequately serve the child's physical, mental, and emotional needs, including the need for permanence, the court should afford the parties the opportunity to present further evidence and enter an appropriate order to ensure those needs are met.

JUDGE WEBB concurs.

JUDGE TERRY dissents.

JUDGE TERRY, dissenting.

¶ 30    I respectfully dissent from the majority's decision.  In my view, because the district court determined that termination of father's parental rights was in the child's best interest, we must affirm that decision.

¶ 31    The majority's opinion properly assigns grave importance to the constitutional right of parents to parent their children.  Certainly, where an allocation of parental responsibilities (APR) is available, *and* where the court finds such an allocation to be in the child's best interest, such an allocation should be ordered instead of termination of the parent's rights.

¶ 32    But where, as here, the court considered the availability of such an APR, but still determined that termination of parental rights would be in the child's best interest, and that finding is supported by the record, we must affirm that decision.  *People in Interest of J.M.B.*, 60 P.3d 790, 793 (Colo. App. 2002); *cf. People in Interest of L.M.*, 2018 COA 57M, ¶ 36 (decision to terminate parental rights was affirmed where record showed that APR would not serve child's best interest).

¶ 33    For these reasons, I would affirm the district court's order terminating parental rights.