25CA2256 Peo in Interest of ERP 06-11-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA2256
Delta County District Court No. 23JV30005
Honorable J. Steven Patrick, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of E.R.P. and R.P., Children,

and Concerning O.R.K. and J.J.P.,

Appellants.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE GOMEZ
Grove and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 11, 2026

---

John Baier, County Attorney, Jodie L. Behrmann, Assistant County Attorney, Delta, Colorado, for Appellee

Robert G. Tweedell, Guardian Ad Litem

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant O.R.K.

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant J.J.P.

¶ 1    In this dependency or neglect proceeding, J.J.P. (father) and O.R.K. (mother) appeal the judgment terminating their parent-child legal relationships with E.R.P. and R.P. (the children).  We affirm.

## I.    Background

¶ 2    In February 2023, the Delta County Department of Human Services (the Department) received a referral reporting concerns about mother's substance use.  A caseworker met with mother, who admitted that she used methamphetamine while caring for the children, and observed father to be highly intoxicated.  As a result, the Department filed a petition in dependency and neglect.

¶ 3    Following the parents' no-fault admissions, the juvenile court adjudicated the children dependent and neglected.  The court then adopted treatment plans for the parents requiring them to (1) cooperate with the Department; (2) complete substance abuse and mental health evaluations and follow all recommendations; (3) maintain sobriety; (4) submit to drug testing as requested by the Department; (5) demonstrate the ability to provide for the children's financial, physical, and mental health, as well as their developmental needs; and (6) maintain a safe, stable, and suitable residence for the children.  Nearly two years later, the Department

1

moved to terminate the parents' legal relationships with the children. In November 2025, following a two-day hearing, the juvenile court granted the motion and terminated father's and mother's parental rights.

## II.     Termination Criteria and Standard of Review

¶ 4     A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the children were adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2025.

¶ 5     Where, as here, the children are under the age of six at the time the petition is filed, the court must also consider the expedited permanency planning (EPP) provisions, which require the court to place the children in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2025.

¶ 6     Whether the juvenile court properly terminated parental rights is a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15; *see also People in Interest of A.S.L.*, 2022

COA 146, ¶ 8 (applying the same standard of review to a determination of whether a department of human services satisfied its obligation to make reasonable efforts). We review the court's factual findings for clear error, but we review de novo its legal conclusions based on those facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10. The credibility of witnesses; the sufficiency, probative value, and weight of the evidence; and the inferences and conclusions drawn from the evidence are all matters within the discretion of the juvenile court. *A.M.*, ¶ 15.

### III. Father's Contentions

### A. Adequacy of Findings

¶ 7 Father contends that the juvenile court's findings were inadequate to support the termination judgment because the court didn't expressly find that (1) he was unfit; (2) his conduct or condition was unlikely to change within a reasonable time; and

(3) termination was in the children's best interests.  We discern no reversible error.[1]

### 1.    Preservation

¶ 8    The Department and the children's guardian ad litem (GAL) urge us not to address this issue because father didn't move for post-trial relief to preserve it.  But an appellant is not required to file a post-trial motion with the juvenile court, and failing to do so doesn't preclude the appellant from raising an issue on appeal.  *See* C.R.C.P. 59(b).  Moreover, a party need not object to a court's findings to preserve a challenge to those findings.  *See In re Marriage of Crouch*, 2021 COA 3, ¶ 17; C.R.C.P. 52.  Accordingly, we consider father's assertion of error regarding the adequacy of the juvenile court's findings.

### 2.    Applicable Law

¶ 9    The findings supporting a termination judgment are adequate if they conform to the criteria in section 19-3-604.  *People in Interest*

---

[1] To the extent that father asserts the juvenile court's findings were insufficient to support the termination of mother's parental rights, we reject the assertion because father lacks standing to challenge the termination of mother's parental rights.  *See People in Interest of J.M.B.*, 60 P.3d 790, 792 (Colo. App. 2002) (one parent doesn't have standing to raise issues regarding another parent's rights).

*of A.G.-G.*, 899 P.2d 319, 323 (Colo. App. 1995).  The findings must "adequately address and resolve each specific requirement for termination."  *People in Interest of M.C.C.*, 641 P.2d 306, 308 (Colo. App. 1982).  We will set aside a judgment for inadequate findings only when the findings don't conform to the statutory criteria and don't allow us to determine the basis for the court's judgment.  *See People in Interest of J.M.B.*, 60 P.3d 790, 794 (Colo. App. 2002).

¶ 10    "When an order is ambiguous, the reviewing court is charged with the task of determining what the trial court intended in issuing the order.  In so doing, the court may refer to the entire record and to the circumstances surrounding the order."  *People in Interest of D.C-M.S.*, 111 P.3d 559, 562 (Colo. App. 2005).

### 3.    Analysis

¶ 11    We agree with father that the juvenile court's findings regarding the section 19-3-604(1)(c) termination criteria could have been more detailed.  But the court's findings sufficiently allow us to determine the basis for its termination judgment.

### a.    Fitness

¶ 12    The juvenile court found that father didn't meet his treatment plan objectives, and that, despite the Department's reasonable

efforts, his treatment plan was unsuccessful. *See* § 19-3-604(2)(h) (when determining a parent's fitness, a juvenile court must consider "[r]easonable efforts by child-caring agencies which have been unable to rehabilitate the parent"). Consequently, the court determined that father couldn't provide a safe, stable, or substance-free home for the children. *See People in Interest of S.K.*, 2019 COA 36, ¶ 74 (an "unfit parent" is "one whose conduct or condition renders [them] unable or unwilling to . . . provide nurturing and safe parenting sufficiently adequate to meet the child[ren]'s physical, emotional, and mental health needs") (citations omitted).

¶ 13    These findings adequately signify the juvenile court's determination that father was unfit, and the record provides ample support for the findings. The caseworker described father's "clear documented pattern of use, sobriety and relapse," including his tendency to stop engaging in services "when he is confident in his sobriety" before eventually relapsing. Indeed, father hadn't demonstrated sobriety outside of a jail setting in the year preceding the termination hearing. The caseworker testified that, although father had shown "short stints of sobriety," he hadn't shown "long-term sobriety" sufficient to demonstrate that the safety concerns

had been mitigated. Therefore, the caseworker opined that it wouldn't be safe to return the children to father's care.

### b. Fitness Within a Reasonable Time

¶ 14 The court also found that father had a history of substance abuse, which resulted in the termination of his legal relationship with his older children, and that he "failed to . . . demonstrate[] any meaningful progress with [his] treatment plan[]" during the two-and-a-half years this case was open. *See id.* at ¶ 75 ("In determining whether a parent can become fit within a reasonable time, the court may consider whether the parent made any changes during the dependency and neglect proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition."); *see also People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24 ("Where a parent has made little to no progress on a treatment plan, the juvenile court need not give the parent additional time to comply."). And the court observed that the children had spent "more than 80% of their young lives" outside their parents' care and that expedited permanency planning was both "required" and "in their best interests."

¶ 15     The court thus impliedly found that father could not become fit within a reasonable time; and, again, the record provides ample support for this finding.  *See D.C-M.S.*, 111 P.3d at 562; *see also A.S.L.*, ¶ 15 (finding no reversible error despite the absence of express findings regarding reasonable efforts).  The children had been in out-of-home placement for the majority of their lives and experienced seven placement changes during the case, including a trial return home to father shortly before one of his relapses.  Thus, the caseworker emphasized the children's need for stability.  Similarly, the children's maternal grandmother, their placement at the time of the termination hearing, believed the children needed stability and structure, in part because of E.R.P.'s dysregulation stemming from father's inconsistent presence in his life.  Ultimately, the caseworker opined that it was not in the children's best interests to continue to work toward reunification with the parents.  *See People in Interest of A.N-B.*, 2019 COA 46, ¶ 34 (a reasonable time "must be determined by considering the physical, mental, and emotional conditions and needs of the child") (citation omitted).

### c. Best Interests

¶ 16     Although the court didn't expressly find that termination was in the children's best interests, it found that adoption was in their best interests. By logical extension, we can discern that the juvenile court found that termination was in the children's best interests. *See J.M.B.*, 60 P.3d at 794; *see also* § 19-5-203(1), C.R.S. 2025 (termination of the parent-child legal relationship is a prerequisite to adoption).

### d. Due Process

¶ 17     To the extent that father asserts his due process rights were violated by the lack of express findings, we disagree. Generally, "due process requires the state to provide fundamentally fair procedures to a parent facing termination," which include (1) notice of the hearing; (2) advice of counsel; and (3) the opportunity to be heard and defend. *People in Interest of R.J.B.*, 2021 COA 4, ¶ 27. And the record shows that father received these three things. Father doesn't provide, and we aren't aware of, any authority supporting his implied assertion that inadequate findings violated his procedural due process rights.

## 4. Conclusion

¶ 18 In sum, the juvenile court's findings sufficiently conform to the statutory criteria, are amply supported by the record, and allow us to determine the basis for the court's order of termination. *See J.M.B.*, 60 P.3d at 794. We therefore discern no basis for reversal.

## B. Appropriate Treatment Plan

¶ 19 Father next asserts that the juvenile court erred by finding that his treatment plan was appropriate. We disagree.

### 1. Preservation

¶ 20 The Department and GAL contend that father didn't preserve this issue because he didn't raise any objection to, or request any modification of, his treatment plan during the pendency of the case. However, we need not determine whether father adequately preserved his argument, or was required to, because even if we assume he did, we discern no basis for reversal. *See L & R Expl. Venture v. Grynberg*, 271 P.3d 530, 536 (Colo. App. 2011) (declining to resolve an issue where it wouldn't change the outcome).

### 2. Applicable Law

¶ 21 Except in some limited circumstances not applicable here, a juvenile court must adopt an appropriate treatment plan for a

parent following a dispositional hearing.  § 19-3-508(1)(e)(I), C.R.S. 2025; *People in Interest of Z.P.S.*, 2016 COA 20, ¶ 15.  A treatment plan seeks to preserve the parent-child legal relationship by assisting the parent in overcoming the problems that required intervention with the family.  *People in Interest of L.M.*, 2018 COA 57M, ¶ 25.  Therefore, an appropriate treatment plan is one that is approved by the court, relates to the children's needs, and provides treatment objectives that are reasonably calculated to render the parent fit to provide adequate parenting to the children within a reasonable time.  § 19-1-103(12), C.R.S. 2025; *People in Interest of K.B.*, 2016 COA 21, ¶ 13.

¶ 22     We measure the appropriateness of a treatment plan by its likelihood of success in reuniting the family, which we assess in light of the facts existing at the time the juvenile court approved the plan.  *People in Interest of B.C.*, 122 P.3d 1067, 1071 (Colo. App. 2005).  The court may modify a treatment plan when new information or changed circumstances render a previously approved treatment plan no longer appropriate.  *Z.P.S.*, ¶¶ 26-27.  The fact that a treatment plan is not ultimately successful doesn't mean that

it was inappropriate when the court approved it. *People in Interest of M.M.*, 726 P.2d 1108, 1121 (Colo. 1986).

¶ 23    A juvenile court has discretion to formulate a treatment plan that relates to the children's needs and is reasonably calculated to render the parent fit within a reasonable time. *People in Interest of M.W.*, 2022 COA 72, ¶ 32.

### 3.    Analysis

¶ 24    Recall that father's treatment plan addressed five main areas: communication, substance abuse, mental health, ability to meet the children's needs, and stability. Father asserts that because his treatment plan wasn't amended following his changed circumstances — specifically, his relapse and later incarceration — it was inappropriate and "incapable of success."

¶ 25    Yet father hasn't asserted that any of the five main objectives of his treatment plan were unnecessary. Instead, he asserts that the treatment plan should've been amended to address (1) "his need for structure or the addition of medications to assist him in remaining sober"; (2) the services available during his incarceration; and (3) his relapse. But his treatment plan addressed his substance use in detail by requiring him to complete a substance

abuse assessment, successfully participate in any recommended inpatient or outpatient programs, attend all required substance abuse counseling, identify triggers of his relapse, and implement learned coping skills as an alternative to substance use. The caseworker testified that she didn't believe father's treatment plan needed to be amended following his relapse and incarceration, because the overall objectives remained the same. Indeed, father hasn't identified any specific objectives, action steps, or services that could have been added to his treatment plan to address his concerns. *See M.M.*, 726 P.2d at 1121.

¶ 26     Father also asserts that because he was incarcerated for two extended periods during the pendency of the case, section 19-3-508(1)(e)(III) required the caseworker to amend his treatment plan to detail the services available to him during his incarceration. It's true that if a parent becomes "continuously incarcerated" for more than thirty-five days after the adoption of a treatment plan, the caseworker must "provide information that details the services and treatment available to [the] parent at the facility or jail where the parent is incarcerated or the caseworker's efforts to obtain the information at the next scheduled court hearing." § 19-3-

508(1)(e)(III). It's also true that the caseworker didn't report the services available to father at the hearing following father's incarceration. But father fails to articulate any prejudice from the lack of such a report. The record reflects that father was aware of, and participated in, a variety of services during his incarceration, including weekly therapy sessions, weekly alcoholics anonymous meetings, psychiatric appointments, medication-assisted treatment, and daily communication with the children. Father hasn't established that, had his treatment plan been amended, or had the caseworker reported the services available to him during a court hearing, any additional treatment or services would have become available to him that would've altered the outcome of this case.

¶ 27 For these reasons, we discern no error in the juvenile court's determination that father's treatment plan was appropriate.

### C. Reasonable Efforts

¶ 28 Father also contends that the juvenile court erred by concluding that the Department made reasonable efforts to rehabilitate him and reunify him with the children. We disagree.

## 1.    Applicable Law

¶ 29    Before a juvenile court may terminate parental rights under section 19-3-604(1)(c), the department must make reasonable efforts to rehabilitate the parent and reunite the family.  §§ 19-1-103(114), 19-3-100.5(1), 19-3-208, 19-3-604(2)(h), C.R.S. 2025.  Reasonable efforts means the "exercise of diligence and care" for children who are in out-of-home placement.  § 19-1-103(114).

¶ 30    Appropriate services provided in accordance with section 19-3-208 satisfy the reasonable efforts standard.  § 19-1-103(114).  Among the services required under section 19-3-208 are screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time services; placement services; and, depending on available funding, drug and alcohol treatment services.  § 19-3-208(2)(b), (d).

¶ 31    In assessing a department's efforts, the juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan, *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011), by "considering the totality of the circumstances and accounting for all services and resources

15

provided to a parent to ensure the completion of the entire treatment plan," *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33.

### 2. Analysis

¶ 32    The juvenile court concluded that the Department made reasonable efforts to rehabilitate father, including providing him with a life skills coach and individual counseling.  But the court found that father didn't take advantage of the services provided and didn't reasonably comply with his treatment plan.

¶ 33    The record supports these findings.  The caseworker met with father in person during his incarceration; helped him create a support plan; ensured that he received family time; and placed referrals for life skills, drug testing, and substance abuse treatment. The caseworker testified that she was unaware of any other service in the county that had not already been provided to father.

¶ 34    Nevertheless, father asserts that the Department didn't make reasonable efforts because it failed to provide him with family time or refer him to services during his incarceration.  But the record reflects that father communicated with the children almost daily via phone and had two video visits during his incarceration.  To be

sure, the Department didn't assist father with the cost of the phone calls with the children, which were paid for by his sister. But father doesn't direct us to any authority requiring the Department to pay for a service when the cost is covered by other financial means. Moreover, father was only incarcerated for a total of about nine months during the two-and-a-half-year-long case. And when he wasn't incarcerated, he had "extensive" family time with the children. *See My.K.M.,* ¶ 33.

¶ 35 We are also unpersuaded by father's argument that the Department failed to provide him with services during his incarceration. As discussed above, father engaged in numerous services during his incarceration, including substance abuse and mental health treatment. Father doesn't identify what further services the Department should have provided during his incarceration to aid in the completion of his treatment plan or the reunification of the family.

¶ 36 Considering all of the services and resources provided to father over the course of the case, we are unpersuaded by his contention that the Department failed to make reasonable efforts to rehabilitate him or to reunify the family. *See id.*

## IV.    Mother's Contentions

### A.    Americans With Disabilities Act

¶ 37    Mother contends that the juvenile court erred by determining that her treatment plan was appropriate and that the Department made reasonable efforts to rehabilitate her because the Department failed to provide reasonable accommodations for her disabilities. We disagree.

### 1.    Applicable Law

¶ 38    The Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213, requires the juvenile court and the department of human services to account for and, if possible, make reasonable accommodations for a parent's disability when devising a treatment plan and providing rehabilitative services. *S.K.*, ¶ 34.  But the ADA doesn't restrict the juvenile court's authority to terminate parental rights if a parent isn't able to meet children's needs, even if that inability is due to a disability. *People in Interest of C.Z.*, 2015 COA 87, ¶ 17.  Rather, the ADA requires that when the juvenile court is assessing whether a parent's treatment plan was appropriate and whether reasonable efforts were made to rehabilitate the parent, the

18

court must consider whether reasonable accommodations were provided to the parent. *S.K.*, ¶ 34.

¶ 39 Whether a parent is a qualified individual with a disability under the ADA requires a case-by-case determination. *Id.* at ¶ 21. Before a department can be required to provide reasonable accommodations under the ADA, it must know that the individual has a qualifying disability, either because that disability is obvious or because someone has informed the department of the disability. *Id.* at ¶ 22. Thus, while a department must provide appropriate screening and assessments of a parent, the parent is responsible for disclosing information regarding their disability. *Id.* at ¶ 21. And a parent should also identify any modifications that they believe are necessary to accommodate their disability. *Id.*

2.    Analysis

¶ 40 Mother's contentions that the Department failed to include a formal evaluation for attention deficit hyperactivity disorder (ADHD) in her treatment plan and to arrange for such an evaluation are belied by the record. Mother's treatment plan required her to "complete a substance abuse and mental health evaluation" and "follow all recommendations." Part of the reason the Department

included this action step was to ensure that mother received treatment after she asserted that she used substances to self-medicate for ADHD. While mother completed the initial mental health evaluation, she didn't complete the separate psychiatric evaluation — recommended by the initial evaluation — despite the caseworker's efforts to refer her to an evaluator. *See People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011) (it is "the parent's responsibility to use [the] services [provided] to obtain the assistance" they need).

¶ 41    We are similarly unpersuaded by mother's argument that the Department failed to provide reasonable accommodations for her ADHD, including appointment reminders, calendar assistance, and "respite when her symptoms became severe." The record reflects that mother attended therapy but refused prescription medication for ADHD because "it did not give her the relief that she was seeking" and she preferred to continue to use methamphetamine. The caseworker also referred mother to a life skills worker to work, in part, on her time management. But, after two sessions, mother declined further life skills services.

¶ 42    We also reject mother's contention that the Department failed to consider the impact her genetic condition may have had on her ability to comply with her treatment plan.  During the case, mother was diagnosed with pseudohypoparathyroidism.  As a result, mother testified that she had high parathyroid hormone levels and "two short fourth metacarpals."  But mother didn't demonstrate that the condition "substantially limit[ed] one or more major life activities," and, thus, that it qualified as a disability under the ADA.  *See* 42 U.S.C. § 12102(1)(A) (defining a "disability" under the ADA as "a physical or mental impairment that substantially limits one or more major life activities").

¶ 43    Above all, throughout the course of this case, mother never asserted that she had a qualifying disability under the ADA.  Nor did she identify or request any treatment plan modifications or reasonable accommodations from either the Department or the juvenile court.  *See S.K.,* ¶ 21.  Indeed, even on appeal, mother doesn't articulate what kind of accommodations would have allowed her to meet the terms of her treatment plan.

¶ 44    For these reasons, we discern no error in the juvenile court's determinations that mother's treatment plan was appropriate and

that the Department made reasonable efforts to rehabilitate her and reunite her with the children.

### B. Ineffective Assistance of Counsel

¶ 45  Mother also contends that she received ineffective assistance of counsel because her counsel failed to provide formal notice of her disabilities and request treatment plan modifications and accommodations for those disabilities.  We disagree.

### 1. Applicable Law

¶ 46  A parent who is unable to pay for counsel has a statutory right to appointed counsel in dependency and neglect proceedings. § 19-3-202(1), C.R.S. 2025.  A parent's statutory right to counsel includes the right to effective assistance of counsel.  *See A.R. v. D.R.*, 2020 CO 10, ¶ 47.

¶ 47  In evaluating a claim of ineffective assistance of counsel in a termination proceeding, we apply the same test we use when evaluating an ineffective assistance of counsel claim in a criminal case.  *Id.* at ¶¶ 48, 60 (citing *Strickland v. Washington,* 466 U.S. 668 (1984)).  Under this test, the parent must establish that (1) counsel's performance was outside the wide range of professionally competent assistance and (2) the parent was

prejudiced by counsel's deficient performance — that is, there is a reasonable probability that but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *Id.* "If the parent fails to establish either prong of this test, the claim fails." *People in Interest of C.B.*, 2019 COA 168, ¶ 26.

¶ 48     Under this approach, an appellate court generally must remand for an evidentiary hearing if the parent's allegations are sufficiently specific to constitute a prima facie showing of ineffective assistance of counsel. *A.R.*, ¶ 63. However, if the parent's allegations lack sufficient specificity, we may summarily deny the ineffective assistance of counsel claim. *Id.*

## 2.     Analysis

¶ 49     Even if we assume, without deciding, that counsel's performance fell below the range of professionally competent assistance, mother hasn't shown that she was prejudiced by the alleged error. Her assertions don't specifically show that, but for her counsel's failure to raise the ADA or to request treatment plan modifications or accommodations, the result of the termination hearing would have been different.

¶ 50　　For example, mother contends that if her counsel had provided formal notice of her qualifying disabilities and requested accommodations early in the case, "there is a reasonable probability that [she] would have obtained medically appropriate treatment for her disabilities, which in turn would have enabled [her] to address the remaining child protection concerns (e.g., residential instability and the lack of regular employment) that led to the Department's involvement with the family."  But, as we've discussed, mother had access to, and declined, medically appropriate treatment for ADHD. And mother doesn't explain how her treatment plan could've been designed differently, identify reasonable accommodations that she needed but wasn't provided, or argue how those accommodations would've rendered her a fit parent in a reasonable time.

¶ 51　　In short, mother's allegations lack specificity to demonstrate prejudice and, thus, she hasn't made a prima facie showing of ineffective assistance of counsel.  Consequently, her ineffective assistance claim must fail.  *See C.B.*, ¶ 26.

### V.　　Disposition

¶ 52　　The judgment is affirmed.

JUDGE GROVE and JUDGE MOULTRIE concur.