121 P.3d 309
The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of M.T., J.T., and C.T., Children,
and Concerning K.T., Respondent-Appellant.
No. 05CA0733.
Colorado Court of Appeals, Division I.
July 28, 2005.
COPYRIGHT MATERIAL OMITTED

 Jim D. Robinson, County Attorney, Rebecca Wiggins, Assistant County Attorney, Denver, Colorado, for Petitioner-Appellee.
 J. William Sierra, Lakewood, Colorado, for Respondent-Appellant.
 Opinion by: Judge GRAHAM.
 K.T. (mother) appeals from a judgment terminating the parent-child legal relationship between her and her children, M.T., J.T., and C.T. We affirm.
I.
 Mother first contends the record does not support the trial court's conclusion that she failed to comply with the treatment plan. We disagree.
 To terminate the parent-child legal relationship, clear and convincing evidence must establish, among other things, that an appropriate treatment plan, approved by the trial court, has not been complied with by the parent or has not been successful in rehabilitating the parent. Section 19-3-604(1)(c)(I), C.R.S.2004; People in Interest of A.M.D., 648 P.2d 625 (Colo.1982).
 Absolute compliance with a treatment plan is not required. People in Interest of C.L.I., 710 P.2d 1183 (Colo.App.1985). However, partial compliance, or even substantial compliance, may not be sufficient to correct or improve the parent's conduct or condition, or to render the parent fit. People in Interest of D.M.W., 752 P.2d 587 (Colo.App.1987); see People in Interest of C.A.K., 652 P.2d 603 (Colo.1982).
 Section 19-3-604(1)(c)(I)(A), C.R.S.2004, provides that if the child is under six years old when the petition in dependency and neglect is filed, "no parent or parents shall be found to be in reasonable compliance with or to have been successful at a court-approved treatment plan when ... [t]he parent has not attended visitations with the child as set forth in the treatment plan, unless good cause can be shown for failing to visit." See also C.S. v. People, 83 P.3d 627 (Colo.2004).
 Thus, while a trial court has discretion to determine whether a parent has established good cause for failing to visit his or
her child, it does not have discretion to conclude that a parent who has not made that showing complied with and was successful under the treatment plan. See People in Interest of E.S., 49 P.3d 1221, 1223 (Colo.App.2002)(the word "shall" involves a "mandatory connotation"); People in Interest of T.L.D., 809 P.2d 1120, 1122 (Colo.App.1991)(same).
 In termination proceedings, the credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn therefrom, are within the discretion of the trial court. Thus, a trial court's findings and conclusions will not be disturbed on review if the record supports them. People in Interest of C.A.K., supra.
 Intervention was necessitated here after mother took the youngest child to the emergency room and the treating physician determined that she had several nonaccidental trauma injuries of various ages. The other two children were also examined, and the doctor determined that bruising around one child's neck was nonaccidental. The children were seventeen months, two years, and four years old when the petition was filed.
 The initial treatment plan required mother to submit to mental health and parent-child interactional assessments, follow all treatment recommendations, and maintain stable housing and employment. Mother's visitations with the children were suspended until the results of the assessments could be evaluated.
 After mother completed the assessments, the treatment plan was amended to add the requirements that she attend and participate in individual therapy and cognitive skills classes, submit to a medication evaluation and follow any treatment recommendations, and have supervised therapeutic visits with the children. After mother completed the medication evaluation, the plan was again amended to require her to continue to take the antidepressant medication prescribed for her.
 The testimony presented at the termination hearing established that mother complied with some aspects of the treatment plan, including the requirements that she maintain stable employment and submit to the mental health and parent-child interactional assessments and medication evaluation. Mother also regularly attended and had made progress during visits with the children for the first several months after visitation was reinstated.
 However, the evidence also established that mother failed to comply with several critical components of the treatment plan that were designed to address her mental health and parenting issues. Specifically, she did not take her medication regularly, attended only three individual therapy sessions, and took only one class in each of two four-session cognitive skills classes she was required to take. Mother also missed seven scheduled visits with the children during the three months before the termination hearing. She explained that she was in the hospital during one visit and could not attend the other six visits because she was either out of town, having car trouble, or working.
 Mother's caseworker testified that the treatment plan was designed to reunite mother with the children and was capable of success, but that the problems the plan was designed to address had not been resolved satisfactorily, and mother had not demonstrated an ability to have all three children placed back in her home successfully.
 Based on this evidence, the court concluded that, although mother complied with some aspects of the treatment plan, she did not comply with other critical components of the plan and thus did not resolve the mental health and parenting issues that led to the children's adjudication. The court further found that mother established good cause for missing the visit during which she was in the hospital, but had not shown good cause for missing the other six visits. Based on these findings, the court concluded that mother had not reasonably complied with the treatment plan and that it had not been successful in rehabilitating her.
 We agree with the trial court that, having found no good cause for six of mother's missed visits with the children, it was required to conclude that she was not in reasonable
compliance with and had not been successful under the treatment plan. See § 19-3-604(1)(c)(I)(A). And, because the record supports the trial court's findings, we will not disturb them on appeal.
II.
 Mother also contends the evidence was insufficient to support the trial court's determination that she was an unfit parent and could not become fit within a reasonable time. Again, we disagree.
 An unfit parent is one whose conduct or condition renders him or her unable to give a child reasonable parental care. The reasonable parental care standard requires, at a minimum, that the parent provide nurturing and protection adequate to meet the child's physical, emotional, and mental health needs. People in Interest of M.H., 10 P.3d 713 (Colo.App.2000).
 To justify terminating the parent-child legal relationship, clear and convincing evidence must establish that the conduct or condition that renders the parent unfit is unlikely to change within a reasonable time. Section 19-3-604(1)(c)(III), C.R.S.2004; People in Interest of A.M.D., supra.
 A reasonable time is not an indefinite time, and it must be determined by considering the physical, mental, and emotional conditions and needs of the child. People in Interest of D.L.C., 70 P.3d 584 (Colo.App.2003); see § 19-3-604(3), C.R.S.2004. Thus, periods as short as five to nine months have been held to be sufficient time to comply with a treatment plan. See People in Interest of R.J.A., 994 P.2d 470 (Colo.App.1999); People in Interest of T.S.B., 757 P.2d 1112 (Colo.App.1988), aff'd on other grounds sub nom. B.B. v. People, 785 P.2d 132 (Colo.1990); People in Interest of R.B.S., 717 P.2d 1004 (Colo.App.1986).
 Moreover, because the children were less than six years old when they were removed from the home, the expedited permanency planning provisions applied and required that they be placed in a permanent home within twelve months of their initial placement out of the home. See §§ 19-1-102(1.6), 19-1-123, 19-3-703, C.R.S.2004.
 In addition to the testimony described above, the evidence indicated that for the first six months after the children were removed from the home, mother insisted that the youngest child's injuries were caused by an accidental fall down the stairs, that the children were always in her care, and that she did not know of anyone who would have harmed her children. However, she eventually told the caseworker her ex-boyfriend had inflicted the injuries.
 With respect to mother's parenting skills, the caseworker testified that, although mother worked well with her children one-on-one, she could not "maintain structure and control" during her visits with all three children.
 Finally, the caseworker testified that the children, who had been in foster care for nearly a year, needed permanency. In her opinion, mother was not fit at the time of the termination hearing, and giving her more time to pursue treatment would not "change the situation."
 Based on this evidence, the trial court concluded that mother was unfit and that, because this is an expedited case and the termination hearing was held almost a year after the children were removed from the home, her conduct or condition was unlikely to change within a reasonable time to meet their needs.
 In support of its determination, the court found that mother had made only "minimal progress" and that the "same problems persist one year later that brought the case before the court." The court expressed concern about mother's lack of diligence in determining who had caused the youngest child's injuries, and found that even if mother did not directly cause the injuries, she either left the child in the care of someone who did, or was otherwise negligent in not ensuring her safety. Finally, the court found that mother could not "focus on all three children at once" or "provide appropriate structure for the children when they are in her care."
 Again, because the record supports the trial court's determination, we will not disturb it on review.
III.
 We also reject mother's claim that the trial court erred in concluding that there
were no less drastic alternatives to termination.
 Before entering an order of termination, a trial court must consider and eliminate less drastic alternatives. People in Interest of M.M., 726 P.2d 1108 (Colo.1986); People in Interest of J.M.B., 60 P.3d 790 (Colo.App.2002). In doing so, it must give primary consideration to the physical, mental, and emotional conditions and needs of the child. Section 19-3-604(3); see also People in Interest of J.M.B., supra.
 Because long-term or permanent placement with a relative is not necessarily in a child's best interests, a trial court may conclude that such a placement is not a viable alternative to termination. People in Interest of M.B., 70 P.3d 618 (Colo.App.2003); People in Interest of J.M.B., supra; People in Interest of E.I.C., 958 P.2d 511 (Colo.App.1998); People in Interest of S.T., 678 P.2d 1054 (Colo.App.1983).
 Finally, in exploring placement options for a child, the department of social services is not responsible for ferreting out and investigating relatives who have not been identified as placement alternatives. See generally §§ 19-1-103(89), 19-3-100.5(3)-(4), 19-3-208, C.R.S.2004.
 Here, mother identified three sets of relatives as potential placement alternatives. The department concluded that the first relative would not be an appropriate placement for the children because he had an extensive criminal history, was in the federal government's supervised release program, could not support the children financially, had used drugs over a long period of time, and had two children who were incarcerated for drug-related convictions.
 One of the family members in the second proposed relative placement home was in the country illegally.
 The third potential relative placement was mother's sister's family. The department conducted a home study, but concluded the family would not be an appropriate placement for the children for a number of reasons, including that: (1) the sister and her husband had reported an incident of domestic violence between themselves; (2) the sister had recently lost her job; (3) the family did not have the financial resources or physical space necessary to support three additional children; (4) their day care plan for the children was to leave them with other family members who had extensive criminal records; (5) the sister had observed bruising on the youngest child before the incident that gave rise to these proceedings, but did not question mother about it or report it to authorities; and (6) the sister had refused to take the children when they were initially placed into foster care.
 The caseworker testified that mother also suggested her mother might be interested in caring for the children long-term, but the caseworker rejected that option because the grandmother was in the federal penitentiary in Texas.
 Finally, the caseworker testified that early in the case, mother and the sister indicated there might be relatives in Mexico who could take the children. The caseworker told mother to contact those relatives and have them contact the caseworker. The caseworker researched how to conduct a Mexican home study, but the relatives did not contact her and mother did not provide more specific information about them until the day of the termination hearing.
 The sister testified at the termination hearing and disputed some of the reasons the department cited as the basis for its determination that her home would not be an appropriate placement for the children.
 Based on this testimony and its evaluation of the credibility of the witnesses, the trial court agreed with the department's determination that the proposed relative placements were not appropriate, and concluded that there were no less drastic alternatives to termination. The court's ruling is supported by the record, and we will not disturb it on review.
 The judgment is affirmed.
 Judge MARQUEZ and Judge HAWTHORNE concur.