24CA1267 Peo in Interest of JM 02-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1267
El Paso County District Court No. 22JV30243
Honorable Lin Billings Vela, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of J.M., a Child,

and Concerning K.M.,

Appellant.

---

JUDGEMENT AFFIRMED

Division VII
Opinion by JUDGE MOULTRIE
Lipinsky and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 20, 2025

---

Kenneth Hodges, County Attorney, Shannon Boydstun, Assistant County Attorney, Colorado Springs, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1      In this dependency and neglect proceeding, K.M. (mother) appeals the judgment terminating her parent-child legal relationship with J.M. (the child).  We affirm.

## I.      Background

¶ 2      Mother gave birth to the child in August 2022.  Days later, the El Paso County Department of Human Services (Department) filed a petition in dependency and neglect, alleging that mother, who had a traumatic brain injury and history of mental illness, failed to provide proper care to the newborn child while at the hospital.  Mother left the hospital before the child was discharged, and the Department subsequently lost contact with her.  The Department assumed temporary legal custody of the child and placed him in foster care.

¶ 3      The juvenile court entered a default judgment against mother and adjudicated the child dependent and neglected based on parental abandonment.  The court found that no reasonable treatment plan could be adopted for mother due to her abandonment of the child and because her whereabouts were unknown.

¶ 4    Later, the Department was able to contact mother twice while she was in jail: once in January 2023, and once in November 2023. Mother never followed up with the Department, attended any court hearings, or visited the child.

¶ 5    The Department moved to terminate mother's parental rights, asserting that she abandoned the child. The court held a termination hearing in May 2024, at which mother's counsel appeared but mother did not. After receiving testimony from the caseworker, an expert in child welfare and protection, the court terminated mother's parental rights under section 19-3-604(1)(a)(I), C.R.S. 2024.

## II.    Discussion

¶ 6    Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. It is within the juvenile court's discretion to determine the credibility of the witnesses; the sufficiency, probative value, and weight of the evidence; and the inferences to be drawn from the evidence. *See id.* We review the juvenile court's factual findings for clear error and accept them if they have record support, but we review de novo the juvenile court's

legal conclusions based on those facts.  *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

¶ 7　　Mother asserts that the juvenile court erred by finding there was no less drastic alternative to termination.  She asserts there were "possible" less drastic alternatives, such as an allocation of parental responsibilities (APR) to a relative or the foster placement, which would allow mother to "maintain family ties" with her child. We discern no basis for reversal.

¶ 8　　A juvenile court may terminate parental rights when the parent has abandoned the child by (1) surrendering physical custody of the child for six months or more and (2) showing no firm intention to resume physical custody of the child or make permanent legal arrangements for the child's care. § 19-3-604(1)(a)(I).  Unlike section 19-3-604(1)(c), section 19-3-604(1)(a)(I) does not require a juvenile court to consider and eliminate less drastic alternatives when it terminates parental rights.  *See People in Interest of A.M.*, ¶ 19 (noting that consideration of less drastic alternatives is implicit in termination criteria under section 19-3-604(1)(c)); *People in Interest of L.M.*, 2018 COA 57M, ¶ 24 ("When considering termination under section

19-3-604(1)(c), the court must also consider and eliminate less drastic alternatives to termination.").

¶ 9    Even so, the juvenile court determined that no less drastic alternative to termination existed.  In doing so, the court found that no maternal family members expressed interest in taking custody of the child; that the child's maternal grandparents, who were involved in the case, supported adoption by the foster placement; and that mother had no contact with the child for two years.  The court also found that this was an expedited permanency planning case and that the child, who was then nearly two years old, was thriving and having his needs met in his foster home.

¶ 10    The record supports these findings.

¶ 11    The court found the caseworker credibly testified that the Department's investigation into the possibility of a kin placement did not reveal any maternal family members interested in becoming a permanent placement for the child.  The child's maternal grandparents — who were involved with the child and facilitated contact between the child and his other maternal relatives — supported the foster placement adopting him.  Mother had no contact with the child after leaving the hospital and told the

caseworker that it was in the child's best interests to stay in the foster home. Further, at the time of the termination hearing, the child was doing well and having his needs met in the foster home, the only home he had ever known. The caseworker opined that termination was in the child's best interests because he needed permanency.

¶ 12 We reject mother's assertion that an APR would enable her to "maintain family ties" with her child for three reasons.

¶ 13 First, mother had no contact with the child for nearly two years, which was practically his entire lifetime. *See People in Interest of N.D.V.*, 224 P.3d 410, 421 (Colo. App. 2009) (considering whether the child is bonded to the parent as a factor in assessing less drastic alternatives).

¶ 14 Second, there was not a permanent placement option with a relative available, let alone one that was in the child's best interests. *See A.M.*, ¶ 27 (a less drastic alternative is not viable simply because it is "adequate"; rather, it must be in the child's best interests).

¶ 15 Third, the court explicitly considered the child's physical, mental, and emotional needs, and his need for a stable and

permanent home, particularly at his young age, when it concluded that termination was in the child's best interests. *See* § 19-3-604(3); *People in Interest of Z.P.*, 167 P.3d 211, 214-15 (Colo. App. 2007) (in considering less drastic alternatives, the court must give primary consideration to the child's physical, mental, and emotional conditions and needs; permanent placement is not a viable less drastic alternative if the child needs a stable, permanent home that can only be assured by adoption); *see also A.M.*, ¶ 32 ("[I]f a trial court considers a less drastic alternative . . . and finds that termination is in the child's best interests, it must reject the alternative and order termination.").

¶ 16     To the extent mother argues the Department failed to sufficiently explore kin placements, we also reject that argument. The Department must evaluate for possible placement a reasonable number of people suggested to it by family members and other interested people. *See People in Interest of D.B-J.*, 89 P.3d 530, 532 (Colo. App. 2004). But it is "not responsible for ferreting out and investigating relatives who have not been identified as placement alternatives." *People in Interest of M.T.*, 121 P.3d 309, 314 (Colo. App. 2005). Mother does not assert on appeal that she or other

6

relatives suggested any kin placement options for the child. To the contrary, the petition alleged mother did not want the child placed with her parents and, as noted, the Department's contacts with the maternal extended family members did not yield anyone interested in becoming a placement for the child.

¶ 17    To the extent mother asserts that the Department did not provide her with reasonable accommodations under the Americans with Disabilities Act of 1990 for her traumatic brain injury or other conditions, she does not develop this argument on appeal. *See D.B-J.*, 89 P.3d at 531 (declining to address undeveloped argument on appeal). Regardless, mother's absence during the case prevented the Department from determining what accommodations she might need. *See People in Interest of S.K.*, 2019 COA 36, ¶ 21.

### III.   Disposition

¶ 18    The judgment is affirmed.

JUDGE LIPINSKY and JUDGE JOHNSON concur.