24CA1844 Peo in Interest of MV 03-27-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1844
Adams County District Court No. 22JV30080
Honorable Caryn A. Datz, Judge

The People of the State of Colorado,

Appellee,

In the Interest of M.V., a Child,

and Concerning A.M.,

Appellant.

JUDGMENT AFFIRMED

Division A
Opinion by JUDGE BERNARD*
Román, C.J., and Graham*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 27, 2025

Heidi Miller, County Attorney, Lisa A. Vigil, Assistant County Attorney, Westminster, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    A mother, A.M., appeals the juvenile court's order terminating her parent-child legal relationship with, her child, M.V.  We affirm.

## I.    Background

¶ 2    Concerned about mother's drug abuse, the Adams County Human Services Department, which we shall shorten to "the department," assigned a caseworker to investigate the welfare of the child.  The child was diagnosed with autism spectrum disorder.  The caseworker saw that the then-five-year-old child did not speak, was not potty trained, was not in school, and was not receiving therapy.  Mother admitted to the caseworker that she used illegal drugs in the home that she shared with the child.

¶ 3    Mother voluntarily moved out of the home.  The department filed a petition in dependency and neglect, initially placing the child with another person.  But that person did not care for the child very well, so the department removed him from her custody and placed him in foster care.

¶ 4    The court adjudicated the child dependent and neglected, and it adopted a treatment plan for mother.  Among other things, her treatment plan required her to live a sober lifestyle.

¶ 5    The department later asked the court to terminate mother's parent-child legal relationship with the child.  Following a hearing, the court granted the motion, and it terminated mother's parental rights.

## II.    Less Drastic Alternatives

¶ 6    Mother contends that the court erred by finding there were no less drastic alternatives to terminating mother's parental rights.  We disagree.

### A.    Standard of Review

¶ 7    Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves application of the termination statute to evidentiary facts.  *People in Interest of L.M.*, 2018 COA 57M, ¶ 17.  We review the court's factual findings for clear error and its legal conclusions de novo.  *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.  A court's determinations regarding permanent placement and whether termination is in the child's best interests are factual findings entitled to deference, unless the record does not support them.  *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 48.  The credibility of witnesses, the sufficiency, probative value, and weight of the evidence, and the

2

inferences and conclusions drawn from it are within the court's discretion. *Id.* at ¶ 15.

### B. Applicable Law

¶ 8 Implicit in the statutory criteria for termination is the requirement that the court consider less drastic alternatives to termination. *People in Interest of M.M.*, 726 P.2d 1108, 1122 (Colo. 1986). When considering less drastic alternatives, the court must base its decision on the best interests of the child, giving primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3), C.R.S. 2024.

¶ 9 For a less drastic alternative to be viable, it must do more than just adequately meet a child's needs; rather, it must be the best option for the child. *A.M.*, ¶ 27. A juvenile court may consider and weigh various factors in determining the viability of a less drastic alternative, including (1) whether an alternative is available, *People in Interest of D.P.*, 160 P.3d 351, 356 (Colo. App. 2007); (2) the parent's fitness to care for the child, *People in Interest of A.R.*, 2012 COA 195M, ¶ 38; (3) whether an ongoing relationship with the parent would be beneficial or detrimental to the child, *People in Interest of J.L.M.*, 143 P.3d 1125, 1127 (Colo. App. 2006); and (4)

whether an alternative would provide adequate permanence while meeting the child's physical, emotional, and mental health needs, *People in Interest of M.B.*, 70 P.3d 618, 626 (Colo. App. 2003).

### C.     Analysis

¶ 10     Mother asserts that (1) the department did not conduct a proper search for placement options because it did not search for all the people who might have been willing to enter into an allocation of parental responsibilities; (2) the termination was not in the child's best interests because he was not in a permanent placement; and (3) allowing more time to search for placement options would have enabled mother to further work on her treatment plan.  We are not persuaded.

### 1.     The Department's Search Efforts

¶ 11     Mother submits that the department should have explored "[a]ll possible relatives and kin[-]like placements" prior to termination.  Notably, however, she does not assert that she or other relatives suggested any kin placement options for the child that the department had not already investigated.

¶ 12     When looking for less drastic alternative placements, the department must evaluate a reasonable number of people suggested

by family members and by other interested people. *See People in Interest of D.B-J.*, 89 P.3d 530, 532 (Colo. App. 2004). But it "is not responsible for ferreting out and investigating relatives who have not been identified as placement alternatives." *People in Interest of M.T.*, 121 P.3d 309, 314 (Colo. App. 2005).

¶ 13    The court found that the department had searched for placement alternatives but that it had not found any relatives available as acceptable placement options. The record shows that the department investigated about twenty familial connections nationwide and that none of these people were interested in taking in the child. We therefore conclude that the record shows that not only did the department seek out less drastic alternative placements to termination of parental rights, but that an allocation of parental responsibilities was not a viable option.

## 2.    Permanency

¶ 14    True, as mother asserts, it would have been preferable for the child to be placed in a permanent home before the court terminated mother's parental rights. But the lack of a permanent placement was not a barrier to termination. *See People in Interest of T.E.M.*, 124 P.3d 905, 911 (Colo. App. 2005) (determining that termination

was in the children's best interests, even if they were not ultimately adopted).  The court found that the child required "a safe, stable, therapeutic permanent home that [could] only be properly provided through adoption."

¶ 15    The record shows that, despite its efforts during the nearly two-year-long case, the department had been unable to find an acceptable permanent placement for the child.  The caseworker explained that a termination order would allow the department to expand its search nationwide to foster parents, adoption websites, and other resources to aid in the search for a permanent home.  The department would thus be able to look for an adoption home that could cater to the child's special needs.  As the caseworker explained, termination and adoption were in the child's best interests because stability was significantly important to the child to ensure his continued improvement.  *See People in Interest of J.C.R.,* 259 P.3d 1279, 1285 (Colo. App. 2011) ("Permanent placement is not a viable less drastic alternative to termination if the children need a stable, permanent home that can only be assured by adoption.").

### 3. Additional Time

¶ 16    Mother submits that, because the child was not in a permanent home, she should have been given more time to address her treatment plan, namely her substance use issues.

¶ 17    A reasonable time for a parent to comply with a treatment plan is not an indefinite time, and the child's physical, mental, and emotional conditions and needs must be considered. *People in Interest of D.L.C.*, 70 P.3d 584, 589 (Colo. App. 2003).

¶ 18    The court found that mother's treatment plan was in place for approximately twenty months "with minimal progress," even though this case was subject to expedited permanency planning provisions. *See* § 19-1-102(1.6), C.R.S. 2024 (children under the age of six years should be placed in permanent homes as expeditiously as possible). The court detailed how mother had not complied with the objectives of her treatment plan, including observing how mother had not maintained her sobriety.

¶ 19    This finding was supported by the caseworker's testimony that she had made four separate referrals for mother to complete a dual diagnosis evaluation. Despite these referrals remaining open for the duration of the case, mother did not complete the evaluation, and

she did not complete drug testing. Plus, she was on probation during the pendency of this case, and she did not comply with the drug testing and sobriety conditions of her probation.

¶ 20 The court next found that "any further delay would not serve the child's best interest because a substantial and unreasonable amount of time would be required for [mother] to become fit." The court also found that the "benefit of stability and permanency for [the] child outweighs the benefit of maintaining the legal parental relationship" between mother and the child.

¶ 21 The caseworker thought that mother would not be able to meet the child's special needs. This was due, in part, to mother's inconsistent participation in visiting with the child. The child did poorly on those occasions when mother visited him, and his behavioral problems became worse. For these and other reasons, the caseworker thought that it would be in the child's best interests for the court to terminate mother's parental rights so that he could be adopted.

## D. Conclusion

¶ 22 Considering the time that this case had remained open, the department's efforts to find placement options, the lack of

alternative placement options, and the child's need for permanency, the court's finding that there was no less drastic alternative to termination was supported by the record.

¶ 23    We therefore affirm the court's order.  *See People in Interest of B.H.*, 2021 CO 39, ¶ 80

CHIEF JUDGE ROMÁN and JUDGE GRAHAM concur.