24CA1694 Peo in Interest of BJC 05-08-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1694
El Paso County District Court No. 23JV30556
Honorable Robin Chittum, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of B.J.C., a Child,

and Concerning B.C.,

Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE FREYRE
Schock and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 8, 2025

---

Kenneth R. Hodges, County Attorney, Melanie E. Gavisk, Assistant County Attorney, Colorado Springs, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, Be.C. (father) appeals the judgment terminating his parent-child legal relationship with B.J.C. (the child).  We affirm.

## I.    Background

¶ 2    After receiving a report that the child was born drug-exposed and suffering withdrawal symptoms, the El Paso County Department of Human Services (the Department) filed a petition in dependency and neglect.  Upon the child's release from the hospital, the Department placed him with maternal grandfather.  But because grandfather was not a permanent placement option, the child was transferred out of state to the care of maternal grandmother, where he remained for the duration of the case.

¶ 3    The juvenile court adjudicated the child dependent and neglected and adopted a treatment plan for father.  Father was incarcerated at the time but was released shortly thereafter.

¶ 4    One and a half months after the juvenile court adopted father's treatment plan, the Department moved to terminate his parental rights.  Two months later, the Department filed a second motion for termination.  Following a hearing, the juvenile court granted the second motion and terminated father's parental rights.

1

## II. Reasonable Time to Comply with the Treatment Plan

¶ 5    Father contends that the juvenile court erred by terminating his parental rights because he did not have adequate time to comply with his treatment plan.  We disagree.

### A. Due Process

¶ 6    Father asserts that, by terminating his parental rights before affording him adequate time to comply with his treatment plan, the juvenile court violated his due process right to a fundamentally fair proceeding.

¶ 7    The procedure by which the parent-child relationship is terminated must satisfy due process.  *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982) (holding that government intervention in "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child" requires "fundamentally fair procedures").  Due process requires that a parent be given notice of the allegations in the termination motion, the opportunity to be heard, the opportunity to have counsel if indigent, and the opportunity to call witnesses and engage in cross-examination.  *See People in Interest of M.B.*, 70 P.3d 618, 622 (Colo. App. 2003).  Due

process also requires that the criteria for termination be proved by clear and convincing evidence. *Santosky*, 455 U.S. at 769-70.

¶ 8 Here, father had (1) notice of the allegations in the Department's termination motion; (2) notice of both the hearing on advisement and the termination hearing; (3) the opportunity to be heard at the termination hearing; (4) appointed counsel to represent his interests; and (5) the opportunity to call witnesses and cross-examine witnesses at the termination hearing. The juvenile court also applied the clear and convincing standard when entering its findings and orders, and, as discussed below, the evidence supported the findings. We conclude, therefore, that father's due process rights were not violated.

B. Applicable Law and Standard of Review

¶ 9 Implicit within the criteria for termination under section 19-3-604(1)(c), C.R.S. 2024, is a requirement that a parent have a reasonable amount of time to comply with their treatment plan. *People in Interest of D.Y.*, 176 P.3d 874, 876 (Colo. App. 2007). What constitutes a reasonable time is fact specific and varies from case to case. *Id.* But a reasonable time is not an indefinite time and what is reasonable in a particular case must be determined by

considering the physical, mental, and emotional conditions and needs of the child. *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 25. Where, as here, a child is under six years old at the time the petition is filed, the action is subject to expedited permanency planning (EPP) provisions, and the court must consider the child's need to be placed in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, C.R.S. 2024.

¶ 10   Whether a juvenile court properly terminated parental rights presents a mixed question of law and fact because it involves application of the termination statute to evidentiary facts. *People in Interest of L.M.*, 2018 COA 57M, ¶ 17. We review the court's factual findings for clear error but review its legal conclusions de novo. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10. The credibility of witnesses; sufficiency, probative value, and weight of the evidence; and the inferences and conclusions drawn from the evidence are within the discretion of the juvenile court. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15.

C.   Analysis

¶ 11   The juvenile court found that father had a reasonable amount of time to work on his treatment plan but, despite the resources

4

provided by the Department, there was no change in his condition over the fifteen months of the case.

¶ 12 Father is correct that the Department initially moved to terminate his parental rights one and a half months after the juvenile court formally adopted his treatment plan and just two days after he was released from incarceration. We tend to agree with father that the Department acted prematurely in moving to terminate his parental rights so soon after the court adopted his treatment plan and before father had any meaningful opportunity to comply. *See People in Interest of J.C.R.*, 259 P.3d 1279, 1284 (Colo. App. 2011) ("The state must afford a parent a reasonable period to comply with a court-approved treatment plan before moving to terminate parental rights."); *see also People in Interest of S.N. v. S.N.*, 2014 CO 64, ¶ 11 n.4 (explaining that "*[i]f* the treatment plan fails, the People may *then* file a motion to terminate the parent-child relationship") (emphasis added).

¶ 13 Nonetheless, we are not convinced that the Department's hasty motion affected father's substantial rights. C.A.R. 35(c). The termination hearing was not held for another four months after father was released from incarceration. Thus, father had a total of

five and a half months to work on his treatment plan before his parental rights were terminated. *See People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006) ("[P]eriods as short as five to nine months have been held to be sufficient time to comply with a treatment plan."). Further, the juvenile court stated in its termination order that it was proceeding not on the Department's initial termination motion but rather on its second, filed two months after the first.

¶ 14    Moreover, the Department continued to provide father with resources and referrals after filing the initial termination motion. For example, while the substance abuse treatment provider could not meet with father during his incarceration, the caseworker made an appointment for father to meet with the provider shortly after his release. The caseworker left father a physical copy of the appointment date before his release and discussed it with him during an in-person meeting. But father did not attend the appointment. Even so, the referral remained open until the termination hearing over three months later in case father chose to participate. And after his release, father was able to have liberal contact with the child, including phone and video calls supervised

6

by the child's placement on a flexible schedule.  But father attempted contact only one time in the four months between his release and the termination hearing.  The Department was also willing to provide financial assistance to father so he could travel to see the child in person, but father did not take any steps to effectuate a trip.  Also, the Department (1) provided father with a phone, bus passes, and a referral to a life skills worker; (2) completed a diligent search to find father after he stopped communicating; and (3) offered to provide father with a fee waiver so he could obtain state identification for employment.  But father did not maintain contact with the Department and did not utilize these resources to complete his treatment plan objectives.

¶ 15    Relying on *D.Y.*, father asserts that once the Department moved to terminate, its commitment to reunification was "equivocal."  But *D.Y.* is factually distinguishable from this case. There, the county department "proceeded as if no reasonable treatment plan could be developed" or approved and did not make referrals for services to allow the parent to demonstrate compliance with the treatment plan.  *D.Y.*, 176 P.3d at 877.  But here, the record reflects that (1) the Department provided father with

numerous referrals and resources even after filing the motion as discussed above; (2) the Department would have withdrawn the termination motion had father become engaged; and (3) father did not communicate with, or respond to, the caseworker for over three months before the termination hearing. *See People in Interest of R.B.S.*, 717 P.2d 1004, 1006 (Colo. App. 1986) (finding that the court need not give the parent additional time to comply with their treatment plan when they have made little to no progress).

¶ 16 Considering that this was an EPP case, we cannot say that the juvenile court erred by terminating father's parental rights after he had over five months to work on his treatment plan and demonstrated little engagement with the provided resources to meet his treatment plan objectives. *See J.C.R.*, 259 P.3d at 1285 (it is the parent's responsibility to use the provided services to comply with the treatment plan).

III.   Less Drastic Alternatives

¶ 17 Father next contends that the juvenile court erred by finding that there were no less drastic alternatives to termination, such as an allocation of parental responsibilities (APR). We are not persuaded.

## A. Applicable Law

¶ 18    Implicit in the statutory scheme for termination is the requirement that the juvenile court consider and eliminate less drastic alternatives to termination.  *People in Interest of M.M.*, 726 P.2d 1108, 1122 (Colo. 1986).  When considering less drastic alternatives, the court gives primary consideration to the child's physical, mental, and emotional conditions and needs.  § 19-3-604(3).  A court may consider and weigh various factors in determining the viability of a less drastic alternative, including whether (1) a less drastic alternative is available, *People in Interest of D.P.*, 160 P.3d 351, 356 (Colo. App. 2007); and (2) the alternative option provides the child with adequate permanency or meets the child's needs, *People in Interest of T.E.M.*, 124 P.3d 905, 910 (Colo. App. 2005).

¶ 19    For a less drastic alternative to be viable, it must do more than "adequately" meet a child's needs; rather, the less drastic alternative must be the "best" option for the child.  *A.M.*, ¶ 27.  If a juvenile court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the alternative and order termination.  *Id.* at ¶ 32.  And under those

circumstances, we must affirm the court's decision if its findings are supported by the record.  *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

### B.    Analysis

¶ 20    The juvenile court considered less drastic alternatives to termination but ultimately concluded termination was in the child's best interests.  The court weighed the loss of the child's relationship with father against the benefits to the child of adoption.  The court found that the child's relationship with father was "nonexistent," and the benefits of adoption greatly outweighed any future potential sense of loss.

¶ 21    The record supports these findings.  At the time of the termination hearing, the case had been open for over fifteen months — the child's entire life — and father had not had any contact with the child.  *See People in Interest of A.R.*, 2012 COA 195M, ¶ 38 ("In determining whether placement with a relative . . . is a viable less drastic alternative to termination, the court may consider . . . whether an ongoing relationship with the parent would be beneficial or detrimental to the child.").

¶ 22    Maternal grandmother, with whom the child was placed, was meeting all the child's needs and had support from her extended family. She, along with maternal grandfather, were the only parents the child knew. Furthermore, maternal grandmother preferred adoption over an APR. *See People in Interest of S.N-V.*, 300 P.3d 911, 920 (Colo. App. 2011) (a juvenile court may consider whether the caregiver favors adoption over an APR). The caseworker opined that the child needed a stable and permanent home, which could only be assured through adoption. *See J.C.R.*, 259 P.3d at 1285 ("Permanent placement is not a viable less drastic alternative to termination if the children need a stable, permanent home that can only be assured by adoption.").

¶ 23    Father asserts that the Department "prematurely discontinu[ed]" relative searches thereby failing to "rule out less drastic alternatives to termination," such as relatives that may have accepted an APR. But the caseworker testified that the child was in a kinship home, and father did not provide a relative resource affidavit or potential family members to assess as placement options. *See People in Interest of M.T.*, 121 P.3d 309, 314 (Colo. App. 2005) (holding that a department "is not responsible for

11

ferreting out and investigating relatives who have not been identified as placement alternatives"). Furthermore, father was "confident and comfortable with the . . . placement" with maternal grandmother. Although the Department's regulations may have required more searches, as father notes, those regulations do not provide the governing legal standard when the juvenile court considers and eliminates less drastic alternatives to termination.

¶ 24 Father last argues that an APR, in and of itself, would provide the child with sufficient permanency and, therefore, the juvenile court erred by finding that termination was in the child's best interests. Even though there was no identified placement willing to accept an APR, the juvenile court still generally considered an APR as an alternative to termination. The juvenile court found, however, that while an APR might meet the child's needs, it was not in his best interests. *See A.M.*, ¶¶ 27, 32. In reaching this conclusion, the juvenile court focused on the child's lack of a relationship with father and the detriment to the child of continued uncertainty and instability. This finding is supported by the caseworker's testimony regarding the child's young age, father's lack of contact with the child, and the child's adjustment to maternal grandmother's home.

Ultimately, the caseworker opined that termination best served the child's physical, mental, and emotional needs. *See L.M.*, ¶ 29.

¶ 25 Because the record supports the juvenile court's finding that termination was in the child's best interests, we discern no basis for reversal.

## IV. Disposition

¶ 26 The judgment is affirmed.

JUDGE SCHOCK and JUDGE SULLIVAN concur.